UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM KOSTROUN,<br><br>Plaintiff,<br><br>v.<br><br>G/O MEDIA, INC.,<br><br>Defendant. | Case No:<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff William Kostroun ("*Plaintiff*"), by and through his undersigned counsel, for his Complaint against defendant G/O Media, Inc. ("*Defendant*") states and alleges as follows:

## INTRODUCTION

1. This action seeks to recover damages for copyright infringement under the Copyright Act, 17 U.S.C. §101 *et seq*.

2. Plaintiff created a photograph of New York Jets head coach Robert Saleh at a press conference (the "*Photograph*") in which Plaintiff owns the rights and licenses for various uses including online and print publications.

3. From at least November 2023 through March 11, 2024, Defendant owned and operated a sports news website at https://deadspin.com (the "*Website*").

4. From at least November 2023 through March 11, 2024, Defendant owned and operated a social media account on YouTube known as Deadspin, located at https://www.youtube.com/@deadspin (the "*Account*").

5. Upon information and belief, on or about March 11, 2024, Defendant sold or otherwise transferred its interest(s) in the Website and the Account to third-party Lineup Publishing.

6. Defendant, without authorization, reproduced and publicly displayed the Photograph in connection with its commercial activities and engaged in this misconduct knowingly

and in violation of the United States copyright laws.

## PARTIES

7. Plaintiff is an individual who is a citizen of the State of New Jersey and maintains a principal place of business in Bergen County, New Jersey.

8. Defendant is a Delaware corporation which, at all relevant times, maintained a principal place of business at 1290 Avenue of the Americas, New York in New York County, New York.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over the federal copyright infringement claims pursuant to 28 U.S.C. §1338(a) and 28 U.S.C. §1331.

10. This Court has personal jurisdiction over Defendant because, at all relevant times, it maintained its principal place of business in New York.

11. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a) because Defendant may be found in this District, regularly conducts business in this District, and a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District, including the unauthorized reproduction, display, distribution, and/or exploitation of Plaintiff's copyrighted work.

## FACTS COMMON TO ALL CLAIMS

### A. Plaintiff's Copyright Ownership

12. Plaintiff is a professional photographer whose work has been widely published by newspapers, media organizations, editorial publications, digital-media companies, and news outlets.

13. Plaintiff is a highly accomplished freelance photojournalist based in the New York metropolitan area who has earned widespread industry acclaim for his high-stakes sports action and spot news photography.

14. Over a career spanning several decades, Plaintiff has established himself as a premier visual storyteller, with his work regularly syndicated by major news outlets such as the



SLG SANDERS · LAW GROUP ·

Associated Press, the New York Post, and the New York Daily News. His ability to capture definitive, split-second moments of athletic triumph and breaking news has made him a fixture at major Tri-State sports venues like MetLife Stadium and Madison Square Garden.

15. Central to Plaintiff's professional profile is his consistent recognition from the New York Press Photographers Association (NYPPA). In the organization's highly competitive annual "Year in Pictures" contest, which honors the finest photojournalism in the region, Plaintiff has repeatedly secured prestigious awards and honorable mentions. His technical precision and artistic framing have frequently earned him top honors in demanding categories such as Sports Action, Sports Feature, and Spot News. These accolades place him among an elite tier of regional photographers who excel at operating under intense deadline pressure.

16. Beyond individual contest ribbons, Plaintiff's extensive catalog of published work serves as an enduring testament to his professional prestige. His photographs are regularly selected for high-profile placement in major national publications, including Sports Illustrated, The Boston Globe, and The Seattle Times. This continuous demand from top-tier editors underscores his reputation as a trusted visual historian of contemporary American sports.

17. Plaintiff's photographs have been licensed to and published by major news organizations, including the New York Post, which licensed and published the Photograph at issue in this action.

18. Plaintiff has devoted substantial time, skill, effort, and expense to developing his photography business and creating a portfolio of original photographs.

19. Plaintiff's photographs are valuable intellectual property assets that are commercially licensed to publishers, media outlets, websites, businesses, and other third parties for authorized use in both digital and print media.

20. Plaintiff is the author and copyright owner of numerous original photographic works protected under the Copyright Act, including the photographs that are the subject of this action.

21. Plaintiff maintains exclusive rights under the Copyright Act, including the rights to

reproduce, distribute, license, publicly display, and otherwise exploit his copyrighted photographs.

22. Plaintiff derives income from the licensing and authorized use of his copyrighted works and maintains exclusive rights in the works he creates pursuant to the Copyright Act.

23. Plaintiff relies upon licensing revenue derived from the authorized use of his photographs and actively protects his copyrighted works against unauthorized reproduction, distribution, and display. Unauthorized use of Plaintiff's photographs deprives Plaintiff of licensing income, diminishes the value of his copyrighted works, and interferes with the market for authorized licenses.

24. Plaintiff has obtained active and valid copyright registrations from the United States Copyright Office (the "*USCO*") which cover many of Plaintiff's photographs while many others are the subject of pending copyright applications.

25. Plaintiff regularly licenses Plaintiff's photographs to media outlets, brands, and commercial entities for a fee.

26. Plaintiff's photographs are original, creative works in which Plaintiff owns protectable copyright interests.

27. On January 7, 2022, Plaintiff first published the Photograph by commercially licensing it for publication to the New York Post at URL https://nypost.com/2022/01/07/robert-saleh-surviving-first-jets-season-and-is-25-pounds-lighter/. A copy of the Photograph is attached hereto as Exhibit 1.

28. Plaintiff published the Photograph by commercially licensing it to a third-party media company for the purpose of display and public distribution.

29. In creating the Photograph, Plaintiff personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the image and made each and every artistic determination necessary for the creation of the work.

30. On April 1, 2022, the Photograph was registered by the USCO under Registration No. VA 2-297-940.

31. Plaintiff created the Photograph with the intention of it being used commercially

and for the purpose of display and/or public distribution.

**B. Defendant's Infringing Activity**

32. At all relevant times, Defendant was the registered owner of the Website and the Account and was responsible for their content.

33. At all relevant times, Defendant was the operator of the Website and the Account and was responsible for their content.

34. At all relevant times, the Website and the Account were a part of and used to advance Defendant's commercial enterprise.

35. At all relevant times, the Website was monetized in that it contained paid advertisements and, on information and belief, Defendant profited from these activities.

36. Upon information and belief, at all relevant times, the Website and the Account formed part of Defendant's commercial enterprise and were used to attract readers and viewers, increase public visibility, generate business opportunities, and enhance Defendant's brand recognition.

37. Upon information and belief, at all relevant times, Defendant's business model depended in substantial part upon the publication, promotion, and distribution of visual-media content through the Website and the Account in order to attract audience attention, increase engagement, expand audience reach, sell advertising, and generate commercial value.

38. Upon information and belief, at all relevant times, Defendant was a digital media company that owned and operated a portfolio of online publications, including the Website, and generated revenue principally by selling advertising displayed alongside the editorial and video content it published.

39. Upon information and belief, at all relevant times, Defendant used the Account to publish sports video content that drove viewers to the Website and expanded the audience for Defendant's advertising inventory, and embedded videos from the Account, including the Infringement, within stories published on the Website.

40. Upon information and belief, on or about March 11, 2024, Defendant sold the



SLG SANDERS · LAW GROUP ·

Website, together with its accumulated content, to a third party, thereby realizing value from content that included the Infringement.

41. Upon information and belief, at all relevant times, Defendant was a sophisticated media company operating in an industry in which the use of professional photography and copyrighted content is prevalent.

42. Upon information and belief, Defendant knew or should have known that the Photograph was protected by copyright, including because the Photograph was of professional quality and distributed through commercial channels. Despite this, Defendant used the Photograph without seeking permission or obtaining a license.

43. Upon information and belief, Defendant's personnel have significant experience in copyright matters and are familiar with industry practices requiring that photographs used in commercial content, advertising, marketing materials, publications, and social-media posts be properly licensed.

44. Upon information and belief, Defendant has not implemented adequate internal policies to verify copyright ownership before content use, indicating a gross negligence in legal compliance, which is essential for a company with Defendant's reach, capabilities, and level of sophistication.

45. Upon information and belief, Defendant’s internal policies, if any, are either not designed to verify copyright ownership before content use or are systematically ignored, indicating a willful, recurring disregard for copyright compliance.

46. Upon information and belief, Defendant has been named as a defendant in other copyright infringement actions arising from its unlicensed use of professional photographs on its websites, including *Martinka v. G/O Media, Inc.,* No. 1:26-cv-05787 (S.D.N.Y.), which concerns a photograph that, like the Photograph here, Defendant appropriated in 2023 after it was licensed to and published by the New York Post.

47. Defendant's failure to adopt or effectively enforce internal copyright policies, if any, indicates *de facto* willful infringement.

SLG SANDERS · LAW GROUP ·

48. On or about November 20, 2023, without permission or authorization from Plaintiff, Defendant willfully and volitionally reproduced the Photograph, cropped and combined it with another image and overlaid text, and publicly displayed the resulting image as the cover image of a video uploaded to the Account at URL https://www.youtube.com/watch?v=Xvhf4o_kp9w, and further embedded and publicly displayed that video, with the Photograph as its cover image, as part of an on-line story on the Website at URL https://deadspin.com/what-took-robert-saleh-so-long-to-bench-zach-wilson-1851036106 (collectively, the "*Infringement*"). Copies of screengrabs depicting the Infringement are attached hereto as Exhibit 2.

49. The Photograph, as incorporated into the cover image of the video, was willfully and volitionally reproduced, uploaded, and stored by Defendant at URL: https://i.ytimg.com/vi/Xvhf4o_kp9w/maxresdefault.jpg.

50. The Infringement is a copy or substantially similar copy of Plaintiff's Photograph, including protectable elements such as composition, subject matter, timing, angle, lighting, perspective, and overall expressive content.

51. The Infringement reproduces the Photograph's depiction of Robert Saleh in full and without alteration of its expressive content, including Plaintiff's chosen framing, lighting, and expression of the subject, and Defendant used it for the same purpose for which Plaintiff licenses it: to illustrate news and commentary about its subject. Defendant did not comment upon, criticize, or report on the Photograph itself.

52. Plaintiff first observed the Infringement on December 27, 2023.

53. Upon information and belief, the Photograph was copied and displayed by Defendant without license or permission, thereby infringing on Plaintiff's copyrights in and to the Photograph.

54. The Infringement includes a URL ("*Uniform Resource Locator*") that was accessible to the public and remained available for viewing for a non-transitory period of time.

55. Upon information and belief, at all relevant times, Defendant took an active and



SLG SANDERS LAW GROUP

pervasive role in the creation, selection, acquisition, licensing, editing, publication, posting, promotion, and display of content appearing on the Website and the Account, including Plaintiff's Photograph.

56. At all relevant times, Defendant exercised control over the content published on its Website and Account and was responsible for selecting, uploading, and displaying the Photograph. Defendant used the Photograph in furtherance of its commercial interests and derived financial benefit from increased user engagement and brand promotion.

57. Upon information and belief, at all relevant times, Defendant directly contributed to and exercised control over the content published on the Website and the Account by, inter alia, utilizing employees, agents, contractors, administrators, editors, moderators, social media managers, and other representatives acting on its behalf, including but not limited to Andy Mills, whom Defendant publicly identified on the Website and the Account as the author of the story and the host of the video comprising the Infringement (collectively, the "*Representatives*").

58. Upon information and belief, Defendant vested its Representatives with actual and/or apparent authority to create, select, upload, publish, edit, modify, remove, monitor, and otherwise manage content appearing on the Website and the Account on Defendant's behalf.

59. Upon information and belief, the Representatives acted within the course and scope of their agency, employment, contractual relationship, and/or other authorized relationship with Defendant when creating, selecting, uploading, publishing, displaying, promoting, and/or distributing the content containing Plaintiff's Photograph.

60. Upon information and belief, Defendant authorized, directed, ratified, approved, and/or knowingly permitted the actions of its Representatives with respect to content appearing on the Website and the Account, including the content containing Plaintiff's Photograph.

61. Upon information and belief, the Representatives actively reviewed, monitored, edited, managed, moderated, and otherwise exercised control over content appearing on the Website and the Account. As a result, Defendant had actual and/or constructive knowledge of the content published thereon, including the Infringement.



SLG SANDERS · LAW GROUP ·

62. Upon information and belief, Defendant maintained the right and ability to supervise, control, review, approve, modify, remove, and otherwise regulate content appearing on the Website and the Account and exercised such control through its Representatives acting within the course and scope of their authority.

63. Upon information and belief, the Photograph was intentionally and willfully selected, published, displayed, and distributed by Defendant.

64. Upon information and belief, Defendant is not entitled to the limitations on liability set forth in 17 U.S.C. §512 because the Infringement was selected, uploaded, approved, published, and/or distributed by Defendant and/or its Representatives acting within the scope of their authority.

65. Upon information and belief, the Infringement was not posted at the direction of a "user" within the meaning of 17 U.S.C. §512(c) but instead were affirmatively selected and published by Defendant and/or its Representatives.

66. Upon information and belief, Defendant was aware of facts or circumstances from which the determination regarding the Infringement was apparent. Defendant cannot claim that it was not aware of the infringing activities, including the specific Infringement which form the basis of this complaint, since such a claim would amount to only willful blindness to the Infringement on the part of Defendant.

67. Upon information and belief, Defendant engaged in the Infringement knowingly and in violation of applicable United States copyright laws.

68. Upon information and belief, Defendant exercised editorial, managerial, and operational control over the content appearing on the Website and the Account.

69. Upon information and belief, at all relevant times, Defendant had the legal right and ability to control and limit the infringing activities on the Website and the Account and exercised and/or had the right and ability to exercise such right.

70. Upon information and belief, at all relevant times, Defendant monitored the content on the Website and the Account.

71. Upon information and belief, Defendant has received a financial benefit directly attributable to the Infringement.

72. Upon information and belief, the Infringement increased engagement with the Website and the Account and generated additional audience traffic, brand visibility, consumer interest, promotional value, and commercial value for Defendant.

73. Upon information and belief, Defendant distributed the Infringement to a broad audience through the Website and the Account and derived commercial value from the resulting user traffic, engagement, advertising impressions, and/or promotional exposure.

74. Upon information and belief, Defendant derived commercial value from the resulting audience engagement, publicity, promotional exposure, brand visibility, audience growth, increased traffic, and related business-development opportunities associated with the Infringement.

75. Upon information and belief, Defendant at all times had the ability to stop the reproduction and display of Plaintiff's copyrighted material.

76. Defendant's use of the Photograph harmed the actual market for the Photograph.

77. Defendant's use of the Photograph, if widespread, would harm Plaintiff's potential market for the Photograph.

78. Defendant's unauthorized use usurps the market for licensed uses of the Photograph and undermines Plaintiff's ability to license his work to other commercial entities.

79. On or about February 1, 2024, Plaintiff, through counsel, notified Defendant in writing of the infringing activity described herein and demanded that Defendant cease and desist from its unauthorized use of Plaintiff's copyrighted work and compensate Plaintiff for its unauthorized use thereof.

80. Thereafter, on or about September 6, 2024, Plaintiff, through counsel, sent a follow-up written communication seeking to resolve the dispute without litigation and affording Defendant an additional opportunity to address Plaintiff's claims.

81. Despite receiving notice of Plaintiff's claims and being afforded multiple

opportunities to resolve the matter amicably, Defendant failed and/or refused to adequately address Plaintiff's claims, thereby necessitating the commencement of this action.

82. Upon information and belief, Defendant continued to publicly display the Infringement on the Website and the Account after receiving Plaintiff's February 1, 2024 notice, and thereafter transferred the Website and the Account to a third party with the Infringement still displayed, without removing it. Such post-notice conduct evidences Defendant's knowledge of Plaintiff's rights and supports a finding that Defendant's infringement was knowing, intentional, and willful.

83. As of the date of this Complaint, the video comprising the Infringement, with the Photograph as its cover image, remains publicly displayed on the Account at URL https://www.youtube.com/watch?v=Xvhf4o_kp9w. Screengrabs of the Infringement as it appeared on the Account on November 9, 2026, are attached hereto as Exhibit 3.

84. The commencement of this action was therefore necessary to protect Plaintiff's rights under the Copyright Act.

85. As a result of Defendant's misconduct, Plaintiff has been substantially harmed.

**FIRST CAUSE OF ACTION**
***(Direct Copyright Infringement, 17 U.S.C. §501 et seq.)***

86. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

87. The Photograph is an original, creative work in which Plaintiff owns a valid copyright.

88. The Photograph is properly registered with the USCO and Plaintiff has complied with all statutory formalities under the Copyright Act and under regulations published by the USCO.

89. Plaintiff has not granted Defendant a license or the right to use the Photograph in any manner, nor has Plaintiff assigned any of its exclusive rights in the copyright to Defendant.

90. Without permission or authorization from Plaintiff and in willful violation of



SLG SANDERS LAW GROUP

Plaintiff's rights under 17 U.S.C. §106, Defendant improperly and illegally copied, reproduced, distributed, adapted, and/or publicly displayed works copyrighted by Plaintiff thereby violating one of Plaintiff's exclusive rights in its copyrights.

91. Defendant's reproduction of the Photograph and display of the Photograph constitutes willful copyright infringement.

92. Upon information and belief, Defendant willfully infringed upon Plaintiff's copyrighted Photograph in violation of Title 17 of the U.S. Code, in that Defendant used, published, communicated, posted, publicized, and otherwise held out to the public for commercial benefit, Plaintiff's original and unique Photograph without Plaintiff's consent or authority.

93. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504 in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for each copyrighted work infringed pursuant to 17 U.S.C. § 504(c).

94. As a result of the Defendant's violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505 from Defendant.

95. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of Plaintiff's copyright pursuant to 17 U.S.C. § 502.

## SECOND CAUSE OF ACTION

***(Vicarious Copyright Infringement)***

96. Plaintiff repeats and incorporates, as though fully set forth herein, each and every allegation contained in the preceding paragraphs, as though set forth in full herein.

97. Upon information and belief, at all material times hereto, Defendant possessed and exercised the right and ability to supervise, control, approve, review, modify, remove, and otherwise regulate the conduct of its Representatives with respect to content appearing on the



SLG SANDERS LAW GROUP

SLG SANDERS LAW GROUP

Website and the Account.

98. As a direct and proximate result of such conduct, Defendant profited from and materially benefited from the Infringement.

99. Defendant enjoyed a direct financial benefit from the Infringement from, *inter alia*, advertising revenue from the increased traffic to its Website and Account and from increase in fees paid by advertisers and sponsors.

100. Upon information and belief, Defendant enjoyed a direct financial benefit from using the appeal or "draw" of Plaintiff's Photograph to increase user traffic to the Website and the Account, thereby increasing advertising revenue.

101. Defendant is liable as a vicarious infringer because it possessed the right and ability to supervise, control, and prevent the Infringement, derived a direct financial benefit from the Infringement, and failed to prevent or stop the Infringement.

102. Upon information and belief, Defendant willfully vicariously infringed upon Plaintiff's copyrighted Photograph in violation of Title 17 of the U.S. Code.

103. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendant's profits attributable to the Infringement as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for each copyrighted work infringed pursuant to 17 U.S.C. § 504(c).

104. As a result of the Defendant's violations of Title 17 of the U.S. Code, the court in its discretion may award Plaintiff the recovery of its reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505.

105. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of his copyrights pursuant to 17 U.S.C. § 502.

**<u>JURY DEMAND</u>**

106. Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff respectfully requests that the Court enters a judgment finding that Defendant has infringed on Plaintiff's rights to the Photograph in violation of 17 U.S.C. §501 *et seq.* and therefore award damages and monetary relief as follows:

a. finding that Defendant infringed Plaintiff's copyright interest in and to the Photograph by copying, reproducing, distributing, publishing, and publicly displaying it without a license or consent;

b. for an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for each copyrighted work infringed pursuant to 17 U.S.C. § 504(c), whichever is larger;

c. for an order pursuant to 17 U.S.C. § 502(a) enjoining Defendant from any infringing use of any of Plaintiff's works;

d. for costs of litigation and reasonable attorney's fees against Defendant pursuant to 17 U.S.C. § 505;

e. for pre-judgment interest as permitted by law; and

f. for any other relief the Court deems just and proper.

DATED: November 11, 2026

**SANDERS LAW GROUP**

By: *_/s/ Craig Sanders_*
Craig Sanders, Esq.
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
Email: csanders@sanderslaw.group
File No.: 129446

*Attorneys for Plaintiff*

SLG SANDERS LAW GROUP